IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ALFRED ASHFORD, JR.,** | : | |
| **Plaintiff** | : | No. 1:25-cv-00660 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| **MICHAEL HEISEY, et al.,** | : | |
| **Defendants** | : | |

**MEMORANDUM**

Presently before the Court are an application for leave to proceed in forma pauperis and complaint filed by pro se Plaintiff Alfred Ashford, Jr. ("Ashford"). For the reasons stated below, the Court will grant Ashford leave to proceed in forma pauperis and dismiss the complaint without providing him with leave to amend.

**I.  BACKGROUND**

Ashford, a convicted and sentenced state prisoner,[1] commenced this action by filing a complaint and an application for leave to proceed in forma pauperis on April 14, 2025. (Doc. Nos. 1, 2.) Unfortunately, Ashford did not use the proper form when seeking leave to proceed in forma pauperis; as such, an Administrative Order issued requiring him to either pay the fee or submit a proper application for leave to proceed in forma pauperis within thirty (30) days or risk dismissal of this action. (Doc. No. 3.) In response to this Administrative Order, Ashford filed an application for leave to proceed in forma pauperis ("IFP Application"), which was docketed on May 12, 2025. (Doc. No. 5.) He did not, however, submit a certified prisoner trust fund account

---

[1] Ashford is incarcerated at Pennsylvania State Correctional Institution Somerset. (Doc. No. 1 at 2.)

statement along with the IFP Application as required by 28 U.S.C. § 1915(a)(2).[2]  Consequently, another Administrative Order issued requiring the submission of Ashford's certified account statement.  (Doc. No. 6.)  Ashford's account statement was docketed with the Clerk of Court on May 27, 2025.  (Doc. No. 7.)

Concerning Ashford's complaint, he names as Defendants Michael Heisey ("Heisey") and Dauphin County Adult Probation ("DCAP").  (Doc. No. 1 at 1.)  Ashford alleges that he suffers from issues with his "cognitive reasoning and cognative [sic] memory" due to a "past brain aneurysm at the time of [his] release from [a] work release facility."  See (Doc. No. 1 at 2).  Ashford avers that Heisey was aware of his disability.  (Id. at 3.)

On an unidentified date and time, Ashford specifically questioned Heisey, a Dauphin County Probation Officer, about "each numbered rule of Megan's Law" and "asked specifically what each numbers [sic] regulation meant."  See (id. at 2, 3).  He also requested that Heisey get another officer "who deals or dealt with [mental health] disability persons or a[n] immediate supervisor," to "address [his] frequently asked questions."[3]  See (id.).  However, Heisey "neglect[ed]" this request.  See (id. at 2).

---

[2]  Section 1915(a)(2) states as follows:

> A prisoner seeking to bring a civil action . . . without prepayment of fees or security therefor, in addition to filing the affidavit filed under paragraph (1), shall submit a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint . . . obtained from the appropriate official of each prison at which the prisoner is or was confined.

See 28 U.S.C. § 1915(a)(2).

[3]  Later in his complaint, Ashford alleges that he "also requested understanding from the work release probation officer and was told they [did not] have time to explain."  See (id. at 3).

Ashford questioned Heisey about the "automobile clause," but was told to "just sign" and everything would be explained to him. See (id.). However, Ashford never received an explanation despite having initialed "each numbered rule and regulation pertaining [to] Megan's Law," which showed that "it was addressed by [the] probation officer." See (id.).

Ashford also asked Heisey whether he needed to register his mother's car if he used it from "time to time."[4] See (id.). Heisey responded by telling Ashford that "it don't work like that." See (id.). Heisey also told Ashford that he needed to "sign or [he could] just go back to prison." See (id.) Due to Heisey mentioning prison, Ashford was placed "under duress and mental instability." See (id.). Thus, Ashford believes he "was verbally cohersed [sic] to sign without clarification." See (id.).

Because of Heisey's conduct, Ashford claims to have suffered mental and emotional anguish. (Id.) He seeks to have his "charge of failure to register . . . retracted [sic] and dismissed." See (id.). He also seeks a refund of all "costs associated with [his] incarceration." See (id.).[5]

---

[4] Although he does not connect it to the other allegations in the complaint, Ashford avers that Heisey knew about Ashford's "need due to [his] work using trucks of others to get jobs as [he] was personally witnessed in the [U-Haul] truck and previously in a FISO private truck owned by City Councilman Mr. Jones." See (id. at 3). It appears that Ashford asserts that he was not told that he needed to register again after Heisey was told about the truck Ashford was driving. (Id.)

[5] Ashford alleges that he previously filed a civil complaint against Heisey "due to his not assisting [Ashford] with clarification when [Ashford] exclaimed [he did] not understand[] the rules pertaining to [the] transportation regulation and rule for the [sic] Megan's Law." See (id. at 3). The Court searched the Electronic Case Filing system and could not locate this prior complaint against Heisey. Ashford did, however, file two (2) petitions for writs of habeas corpus under 28 U.S.C. § 2241 in which he raised similar arguments relating to a failure to register charge filed in the Court of Common Pleas of Dauphin County. See Ashford v. Dauphin County Adult Prob., No. 1:23-cv-01672, 2024 WL 289334, at *1 & n.1 (M.D. Pa. Jan. 25, 2024) (describing Ashford's arguments and taking judicial notice of Ashford's Dauphin County criminal case, docketed at Commonwealth v. Ashford, No. CP-22-CR-0001068-2023 (Dauphin County Ct. Com. Pl. filed Mar. 21, 2023)). The Court ultimately dismissed both petitions. See

3

## II.   LEGAL STANDARDS

### A.   Applications for Leave to Proceed in Forma Pauperis

Under 28 U.S.C. § 1915(a)(1), the Court may allow a plaintiff to commence a civil case "without prepayment of fees or security therefor," if the plaintiff "submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor."[6] See id.  This statute

> "is designed to ensure that indigent litigants have meaningful access to the federal courts." Neitzke v. Williams, 490 U.S. 319, 324, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).  Specifically, Congress enacted the statute to ensure that administrative court costs and filing fees, both of which must be paid by everyone else who files a lawsuit, would not prevent indigent persons from pursuing meaningful litigation. [Deutsch v. United States, 67 F.3d 1080, 1084 (3d Cir. 1995)].  Toward this end, § 1915(a) allows a litigant to commence a civil or criminal action in federal court in forma pauperis by filing in good faith an affidavit stating, among other things, that [they are] unable to pay the costs of the lawsuit. Neitzke, 490 U.S. at 324, 109 S.Ct. 1827.

See Douris, 293 F. App'x at 131–32 (footnote omitted).

A litigant can show that they are unable to pay the costs of the lawsuit "based on a showing of indigence." See Deutsch, 67 F.3d at 1084 n.5.  The Third Circuit Court of Appeals has not defined what it means to be indigent; nevertheless, "[a] plaintiff need not 'be absolutely destitute to enjoy the benefit of the statute.'" See Mauro v. N.J. Supreme Ct. Case No. 56,900, 238 F. App'x 791, 793 (3d Cir. 2007) (unpublished) (quoting Adkins v. E.I. DuPont de Nemours & Co., 335 U.S. 331, 339 (1948)).  Some district courts have explained that all a litigant needs to

---

id. at *3; Ashford v. Dauphin County Adult Prob., No. 1:23-cv-01673 (M.D. Pa. filed Oct. 10, 2023), ECF Nos. 7, 8.

[6] While the Court recognizes that Ashford is incarcerated, "[t]he reference to prisoners in § 1915(a)(1) appears to be a mistake.  In forma pauperis status is afforded to all indigent persons, not just prisoners." See Douris v. Middletown Twp., 293 F. App'x 130, 132 n.1 (3d Cir. 2008) (unpublished).

show is that because of their poverty, they cannot afford to pay for the costs of the litigation and provide themselves with the necessities of life.  See, e.g., Rewolinski v. Morgan, 896 F. Supp. 879, 880 (E.D. Wis. 1995) ("An affidavit demonstrating that the petitioner cannot, because of his poverty, provide himself and any dependents with the necessities of life is sufficient."); Jones v. State, 893 F. Supp. 643, 646 (E.D. Tex. 1995) ("An affidavit to proceed in forma pauperis is sufficient if it states that one cannot, because of poverty, afford to pay for the costs of litigation and still provide for him- or herself and any dependents.").

    **B.**  **The Court's Screening of the Complaint Under 28 U.S.C. §§ 1915A and 1915(e)(2)**

Under 28 U.S.C. § 1915A, this Court must "review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  See 28 U.S.C. § 1915A(a).  If a complaint fails to state a claim upon which relief may be granted, the Court must dismiss the complaint.  See id. § 1915A(b)(1).  The Court has a similar screening obligation with respect to actions filed by prisoners proceeding in forma pauperis.  See id. § 1915(e)(2)(B)(ii) ("[T]he [C]ourt shall dismiss the case at any time if the [C]ourt determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted . . . .").

In reviewing legal claims under Sections 1915A(b) or 1915(e)(2), the Court applies the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  See, e.g., Smithson v. Koons, No. 15-cv-01757, 2017 WL 3016165, at *3 (M.D. Pa. June 26, 2017) ("The legal standard for dismissing a complaint for failure to state a claim under § 1915A(b)(1) [and] § 1915(e)(2)(B)(ii) . . . is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure."), report and recommendation adopted, 2017 WL 3008559 (M.D. Pa. July 14, 2017); Mitchell v. Dodrill, 696

5

F. Supp. 2d 454, 471 (M.D. Pa. 2010) (explaining that when reviewing a complaint for possible dismissal pursuant to § 1915A, "a court employs the motion to dismiss standard set forth under Federal Rule of Civil Procedure 12(b)(6)"). To avoid dismissal under Rule 12(b)(6), a plaintiff must set out "sufficient factual matter" in the complaint to show that their claims are facially plausible. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). This plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)). When evaluating the plausibility of a complaint, the Court accepts as true all factual allegations and all reasonable inferences that can be drawn from those allegations, viewed in the light most favorable to the plaintiff. See id.; In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). However, the Court must not accept legal conclusions as true, and "a formulaic recitation of the elements of a cause of action" will not survive a district court's screening under Sections 1915A and 1915(e)(2). See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007).

In addition, in the specific context of pro se prisoner litigation, the Court must be mindful that a document filed pro se is "to be liberally construed." See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Higgs v. Att'y Gen., 655 F.3d 333, 339–40 (3d Cir. 2011) (explaining that "when presented with a pro se litigant, we have a special obligation to construe his complaint liberally" (citation and internal quotation marks omitted)). Therefore, a pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted) (quoting Estelle, 429 U.S. at 106). This means the court must "remain flexible, especially 'when

Case 1:25-cv-00660-YK-SH    Document 8    Filed 06/12/25    Page 7 of 14

dealing with imprisoned pro se litigants . . . .'" See Vogt v. Wetzel, 8 F.4th 182, 185 (3d Cir. 2021) (quoting Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 244–45 (3d Cir. 2013))).

Additionally, when construing a pro se complaint, the court will "apply the relevant legal principle even when the complaint has failed to name it." See Mala, 704 F.3d at 244. However, pro se litigants "'cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.'" See Vogt, 8 F.4th at 185 (quoting Mala, 704 F.3d at 245).

### III.    DISCUSSION

#### A.    The IFP Application

After reviewing the IFP Application as well as Ashford's certified prison trust fund account statement, it appears that Ashford is unable to pre-pay the costs of this civil rights action. Therefore, the Court will grant the IFP Application and allow him to proceed in forma pauperis.[7]

#### B.    Screening of Ashford's Claim(s)

As best the Court can discern, Ashford seeks the dismissal of his criminal charges and his release from state incarceration because Defendants allegedly violated his rights under Title II of the Americans with Disabilities Act ("ADA") when Heisey communicated with him about Ashford's Megan's Law paperwork. See (Doc. No. 1 at 1 (mentioning that he is disabled and referencing 28 C.F.R. § 35.108)). He also appears to seek damages for his emotional injuries and reimbursement of any costs incurred in his Dauphin County criminal prosecution. There are several issues with these claims, all of which warrant dismissal of the complaint.

---

[7] However, because Ashford is a prisoner, he is advised that he will be obligated to pay the filing fee in installments in accordance with the PLRA, regardless of the outcome of this action. See 28 U.S.C. § 1915(b).

7

### 1. Requests to be Released from Prison and have Charges Dismissed

Ashford seeks the dismissal of his failure to register charge as well as his release from incarceration. (Doc. No. 1 at 2.) These forms of relief are not cognizable in a civil complaint. "[W]hen a state prisoner is challenging the very fact or duration of [their] physical imprisonment, and the relief [they] seek[] is a determination that [they are] entitled to immediate release or a speedier release from that imprisonment, [their] sole federal remedy is a writ of habeas corpus." Preiser v. Rodriguez, 411 U.S. 475, 500 (1973); Jaffery v. Atl. County Prosecutor's Office, 695 F. App'x 38, 41–42 (3d Cir. 2017) (unpublished) ("[T]o the extent Jaffery seeks dismissal of the charges against him as a result of constitutional violations, such relief is only available through a writ of habeas corpus."). Accordingly, these claims for relief will be dismissed without prejudice to Ashford filing a petition for a writ of habeas corpus.[8]

### 2. ADA Claim

As indicated above, Ashford appears to raise a disability discrimination claim under the ADA in which he seeks damages for emotional distress. In general, "[t]he ADA embodies a 'national mandate for the elimination of discrimination against individuals with disabilities.' 42 U.S.C. § 12101(b)(1). The statute's work is performed across 'three titles of regulation—Title I (employers), Title II (governments), and Title III (public accommodations).'" See Zangara v. Nat'l Bd. of Med. Examiners, Nos. 24-2664, 24-2672, 2025 WL 1218188, at *4 (3d Cir. Apr. 28, 2025) (unpublished) (quoting Matheis v. CSL Plasma, Inc., 936 F.3d 171, 176 (3d Cir. 2019)). Here, Ashford presumably raises a Title II ADA claim insofar as Heisey is a county employee and DCAP is a county probation department.

---

[8] The Court expresses no opinion on the viability of such a petition.

8

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." See 42 U.S.C. § 12132(1).[9] To state a plausible claim under Title II of the ADA, a plaintiff must plead that "(1) [they are] a qualified individual; (2) with a disability; (3) who was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of [their] disability." See Haberle v. Troxel, 885 F.3d 170, 178 (3d Cir. 2018) (quoting Bowers v. NCAA, 475 F.3d 524, 553 n.32 (3d Cir. 2007)). The term "disability" is defined as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3))." See 42 U.S.C. § 12102(1). In addition, the ADA provides that "[t]he definition of disability in this chapter shall be construed in favor of broad coverage of

---

[9] The Third Circuit has not yet addressed in a published opinion whether Title II allows for liability against individuals. See Emerson v. Thiel Coll., 296 F.3d 184, 189 (3d Cir. 2002) (concluding that individual defendants were not subject to individual liability under Title III of the ADA, and pointing out that "[t]his result comports with decisions of other courts of appeals holding individuals are not liable under "Titles I or II of the ADA, which prohibit discrimination by employers and public entities respectively"); Kokinda v. Pa. Dep't of Corr., 779 F. App'x 938, 942 (3d Cir. 2019) (unpublished) (concluding that plaintiff's "claims for individual damages liability under Title II of the ADA fail for the simple reason that there is no such liability" (citations omitted)); Bowens v. Wetzel, 674 F. App'x 133, 136 (3d Cir. 2017) (unpublished) (noting that "the District Court could have properly followed the holdings of those circuits which have concluded that there is no individual damages liability under Title II of the ADA, which provides an additional basis to affirm the dismissal of this claim" (citations omitted)); see also Constantine v. N.J. Dep't of Banking & Ins., No. 23-2423, 2024 WL 1988829, at *6 n.9 (3d Cir. May 6, 2024) ("We have apparently not addressed whether the ADA's anti-retaliation provision provides for individual liability."). Given the other reasons supporting dismissal of the complaint, the Court will not address whether Ashford can maintain a Title II individual liability claim against Heisey.

individuals under this chapter, to the maximum extent permitted by the terms of this chapter." See id. § 12102(4)(A).

In this case, even if Ashford sufficiently pleaded facts supporting a reasonable inference that he was intentionally discriminated against on the basis of a disability,[10] there are two fatal flaws with his ADA claim. First, Ashford seeks only damages for the emotional distress he suffered because of Heisey's conduct. See (Doc. No. 1 at 2). These damages are unavailable for violations of Title II. See Doherty v. Bice, 101 F.4th 169, 174 (2d Cir. 2024), cert. denied, 145 S. Ct. 381 (2024);[11] A.W. by & Through J.W. v. Coweta County Sch. Dist., 110 F.4th 1309, 1314 (11th Cir. 2024) ("Damages for emotional distress are not recoverable under Title II."), cert. denied sub nom., A.W. by & Through J.W. v. Coweta County Sch. Sys., 145 S. Ct. 1058 (2025); J.L. v. Lower Merion Sch. Dist., No. 20-cv-01416, 2024 WL 5250301, at *8 (E.D. Pa. Dec. 30, 2024) ("The Court holds that Plaintiffs cannot, as a matter of law, recover emotional distress damages under Title II of the ADA following the Supreme Court's decision in Cummings."); Humphrey v. Pa. Dep't of Corr., No. 23-cv-00109J, 2024 WL 5414808, at *5

---

[10] It is doubtful that Ashford plausibly pleaded this claim insofar as he (1) alleges that Heisey acted negligently in not getting another officer to answer his questions and (2) fails to allege facts supporting a reasonable inference that he was discriminated against on the basis of any disability.

[11] In Doherty, the Second Circuit Court of Appeals explained that Title II "expressly links any 'remedies, procedures, and rights' [of persons alleging disability discrimination under Title II] to the 'remedies, procedures, and rights' set forth in the Rehabilitation Act." See 101 F.4th at 174 (quoting 42 U.S.C. § 12133). The Second Circuit then pointed out that the United States Supreme Court determined that emotional distress damages are not recoverable under the Rehabilitation Act in Cummings v. Premier Rehab Keller, P.L.L.C., 596 U.S. 212, 221 (2022). See id. "Because recovery for emotional distress damages is unavailable under the Rehabilitation Act's cause of action, [the Second Circuit held] that such recovery is likewise unavailable under Title II of the ADA, which explicitly borrows the 'remedies, procedures, and rights' of the Rehabilitation Act." Id. at 175.

(W.D. Pa. Dec. 10, 2024) (determining that plaintiff could not recover emotional distress damages under Title II of the ADA).

Second, Ashford's ADA claim is barred under Heck v. Humphrey, 512 U.S. 477 (1994). In Heck, the United States Supreme Court held that:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a [Section] 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

See id. at 486–87 (footnotes omitted).

Although Heck involved a plaintiff's claims under 42 U.S.C. § 1983, federal courts have extended its reasoning to Title II claims under the ADA. See, e.g., Bogovich v. Sandoval, 189 F.3d 999, 1002–03 (9th Cir. 1999) ("There is no reason to believe that ADA claims should be treated any differently than § 1983 claims when examining whether a prisoner's case should have been brought under habeas corpus."); Davila v. Pennsylvania, No. 3:11-cv-01092, 2014 WL 1321010, at *7–8 (M.D. Pa. Mar. 28, 2014) (discussing decisions by other federal courts applying Heck to Title II claims and concluding that, inter alia, Heck barred plaintiff's Title II claim because success on the claim "would necessarily call into question the validity of [the plaintiff's] guilty plea in light of his alleged disability"). Applying Heck's reasoning here, the

11

Court turns to whether Ashford's action would necessarily call into question his Dauphin County conviction for failure to register with the Pennsylvania State Police.

According to the docket sheet from Ashford's criminal case in Dauphin County, he pleaded guilty to one (1) count of failure to register with the Pennsylvania State Police in violation of 18 Pa. C.S. § 4915.1(a)(1). See Commonwealth v. Ashford, No. CP-22-CR-0001068-2023 (Dauphin Cnty. Ct. Com. Pl. filed Mar. 21, 2023)). To support this conviction, Ashford had to "knowingly fail[] to[] . . . register with the Pennsylvania State Police as required under 42 Pa. C.S. § 9799.15 (relating to period of registration), 9799.19 (relating to initial registration) or 9799.25 (relating to verification by sexual offenders and Pennsylvania State Police)." 18 Pa. C.S. § 4915.1(a)(1). The Pennsylvania Criminal Code defines "knowingly" as follows:

> A person acts knowingly with respect to a material element of an offense when:
>
> (i) if the element involves the nature of [their] conduct or the attendant circumstances, [they are] aware that [their] conduct is of that nature or that such circumstances exist; and
>
> (ii) if the element involves a result of [their] conduct, [they are] aware that it is practically certain that [their] conduct will cause such a result.

See id. § 302(b)(2). Thus, to knowingly fail to register, "a registrant must be aware that it is practically certain [they] will fail to report . . . ." See Commonwealth v. Beauchamps, 320 A.3d 717, 725 (Pa. Super. Ct. 2024) (quoting Commonwealth v. Roberts, 293 A.3d 1221, 1225 (Pa. Super. Ct. 2023), aff'd, 329 A.3d 1129 (Pa. 2025)). "[I]n most cases a failure to register 'will be knowing, because a rational actor knows when he fails to do something. The only exceptions would be in cases where a registrant has dementia, is in a coma, or suffers from a similar mental incapacity.'" Id. (quoting Roberts, 293 A.3d at 1225).

12

Here, Ashford's allegations in his complaint relate to whether he acted knowingly in failing to register. He alleges that he asked questions about certain Megan's Law rules, particularly relating to his use of an automobile, but Heisey allegedly did not explain them to him or get another officer who "dealt with [mental health] disability persons or a[n] immediate supervisor." See (Doc. No. 1 at 2). He also claims that Heisey coerced him to sign the Megan's Law form. See (id. at 2, 3). Overall, success in this action would necessarily call into question Ashford's conviction for failure to register with the Pennsylvania State Police. Accordingly, it is barred by Heck, and the Court will dismiss it.

    **C.    Leave to Amend**

Having determined that Ashford's claims against Defendants are subject to dismissal, the Court must determine whether to grant him leave to file an amended complaint. Courts should generally give leave to amend but may dismiss a complaint with prejudice where leave to amend would be inequitable or futile. See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007) ("[I]n civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."); see also Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) ("When a plaintiff does *not* seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that [they have] leave to amend within a set period of time, unless amendment would be inequitable or futile."). "In determining whether [amendment] would be futile, the district court applies the same standard of legal sufficiency as [it] applies under Fed. R. Civ. P. 12(b)(6)." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). In this case, the Court finds that granting Ashford leave to amend would be futile in light of the above reasons for dismissal.

IV.    **CONCLUSION**

For the reasons stated above, the Court will: (1) grant the IFP Application; (2) dismiss the complaint to the extent that Ashford seeks dismissal of his criminal charge or his release from incarceration without prejudice to him seeking such relief through a petition for a writ of habeas corpus; (3) dismiss the complaint to the extent that Ashford is challenging his conviction without prejudice to him refiling it if his conviction is "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus," see Heck, 512 U.S. at 487; (4) dismiss the complaint with prejudice to the extent that Ashford is seeking emotional distress damages for violations of Title II of the ADA; (5) decline to grant Ashford leave to file an amended complaint; and (6) direct the Clerk of Court to close the case. An appropriate Order follows.

                                          s/ Yvette Kane
                                          Yvette Kane, District Judge
                                          United States District Court
                                          Middle District of Pennsylvania